UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DURRELL ANTHONY PUCKETT,<br><br>  Plaintiff,<br><br>  v.<br><br>D. MORENO, *et al.*,<br><br>  Defendants. | Case No. 2:22-cv-0650-JDP (P)<br><br>ORDER |

Plaintiff, a state prisoner, alleges that defendants Smith, Haynes, Williams, and Moreno violated his Eighth Amendment rights by refusing to acknowledge that he was suicidal. ECF No. 14 at 3. He also alleges that, in his suicidal state, he started a fire in his cell and defendants violated his Eighth Amendment rights by failing to extricate him promptly. *Id.* at 3-4.

Plaintiff moves for summary judgment. ECF No. 81. Defendants also move for summary judgment, arguing that plaintiff's claims are contradicted by video evidence showing that defendants appropriately responded to plaintiff each time he started a fire in his cell. ECF No. 91.[1] Defendants further claim that they are entitled to qualified immunity. *Id.* Additionally,

---

[1] Defendants also moved for an extension of time to file their motion for summary judgment, ECF No. 89, which plaintiff did not oppose. I will grant this motion and deem defendants' motion timely.

plaintiff has filed certain motions for fees and settlement conferences. ECF Nos. 82, 88, 90, & 94. I will grant defendants' motion for summary judgment and deny plaintiff's motion for summary judgment. I will also deny plaintiff's miscellaneous motions.

## Motion for Summary Judgment

### I.   Background

In his second amended complaint, plaintiff alleges that, on May 6, 2021, he set a fire in his cell after defendants Smith, Haynes, Moreno, and Williams ignored his claims that he was suicidal and declined to summon a doctor. ECF No. 14 at 3. He claims that once the fire department was summoned, the named defendants purposefully delayed removing him from the cell. *Id.* at 3-4.

A video of the incident shows the following.[2] On May 6, 2021, at approximately 5:23 p.m., plaintiff set a fire inside his cell. The cell block appeared empty, with inmates inside their cells and no correctional officers roaming. The flames appeared to die down approximately four minutes later, but smoke continued to billow from plaintiff's cell door. At this point, the cell block's fire alarm started blinking and correctional officers entered the cell block. At 5:28 p.m., an officer looked into plaintiff's cell, and he and another officer immediately returned with a bucket full of water. At 5:29 p.m., these officers threw the water into plaintiff's cell to extinguish the fire.

At 5:32 p.m., another officer approached plaintiff's cell, looked inside, and then exited. At 5:33 p.m., seven officers approached plaintiff's cell and peered inside; it appeared that the fire had re-ignited. An officer remained at plaintiff's door while other correctional officers moved other inmates out of the cell block. At 5:38, flames and smoke could no longer be seen coming from plaintiff's cell, and at approximately 5:39 p.m., the fire department entered the cell block. Officers continued evacuating inmates while firefighters assessed the scene. At 5:43 p.m., the cell block was empty, with only two firefighters inside watching plaintiff's cell. By 6:00 p.m.,

---

[2] The video provided by defendants does not contain audio.

1  the smoke had dissipated.  A correctional officer approached plaintiff's cell and looked inside,
2  then walked away.

3  The cell block remained empty, with plaintiff still inside his cell, until 6:33 p.m., when
4  three correctional officers approached plaintiff's cell.  The officers looked inside the cell, and
5  appeared to be speaking with plaintiff.  At least one officer remained at plaintiff's cell door until
6  6:38 p.m.  The cell block remained empty, with officers periodically walking through the block,
7  until 6:51 p.m., when officers began bringing back the previously evacuated inmates.  At
8  7:04 p.m., an officer returned to plaintiff's cell, peered inside, and then walked away.  All
9  previously evacuated inmates were returned to their cells by 7:08 p.m., and correctional officers
10 exited the cell block.

11 Smoke appeared to start building in the cell block again at 7:17 p.m., and officers returned
12 to the cell block at 7:32 p.m.  Two officers surrounded plaintiff's cell and used a flashlight to look
13 into it.  One officer threw a bucket of water into plaintiff cell at 7:33 p.m.  Officers again
14 evacuated the other inmates from the cell block, while other officers surveilled plaintiff's cell.
15 The fire department returned to the cell block at 7:42 p.m., and a firefighter approached plaintiff's
16 cell.  Officers and the fire department continued to surveil the cell block, and at 7:53 p.m. the fire
17 department began unraveling a hose and approaching plaintiff's cell.  At 7:54 p.m., with plaintiff
18 still inside his cell, firefighters hosed down the cell, pointing the hose underneath the cell door,
19 around the cell door frame, and inside the food slot.  A few minutes later, the fire department
20 began squeegeeing the water into drains, and the cell block emptied again.  At 8:15 p.m., five
21 officers extracted plaintiff from his cell.

22 Written evidence sheds additional light on the incident.  Defendant Smith, via declaration,
23 stated that plaintiff was housed in the Restricted Housing Unit ("RHU") on the date of the
24 incident, and had been housed there since 2015.  ECF No. 91-6 at 2.  The RHU houses inmates
25 who cannot be placed into the general population due to safety concerns.  *Id.*

26 According to Smith, plaintiff had a long history of assaulting staff, and correctional staff
27 were more vigilant than usual around plaintiff due to his history.  *Id.*  Over the past nine years,
28 plaintiff had been found guilty of assaulting, battering, or threatening officers over seventy times,

3

1    and he had a history of biting staff. *Id.* At least two correctional officers had had portions of
2    their fingers bitten off by plaintiff. *Id.*

3    Smith states that when plaintiff set the initial fire, officers asked him to submit to
4    restraints and to exit his cell many times, but he refused. *Id.* Smith claims that plaintiff refused
5    to exit for two and a half hours, during which time he threatened to throw feces and urine at staff
6    and to attack staff who came near his cell. *Id.* He states that staff continually checked on plaintiff
7    during the event, and that there was no need to extract him from his cell on an emergency basis at
8    any point. *Id.* at 3. He states that no correctional staff attempted to harm plaintiff by delaying his
9    removal from his cell. *Id.*

10   In plaintiff's deposition, he testified that he set two fires in his cell on May 6, 2021,
11   because he was feeling suicidal, and officers refused to pull him out of his cell. ECF No. 100 at
12   7-9. He indicated that at the start of the fire, he was willing to submit to being restrained and
13   taken out of his cell, but he later changed his mind because he believed proper precautions were
14   not being taken. *Id.* at 9. He stated that he was under "statewide security precautions" that
15   required him to be given a sergeant, a camera, and two officers in order to be escorted from his
16   cell, and a bite mask would be used. *Id.* Initially, he was okay leaving his cell, but when he saw
17   Smith did not have a camera with him, he refused to exit the cell. *Id.* He stated that he feared for
18   his safety if he left the cell without the proper precautions because Moreno and Williams had
19   threatened to beat him up if he left the cell. *Id.* at 9-10. Plaintiff denied threatening the staff
20   when they approached his cell and insisted that he begged to exit his cell. *Id.* at 19-20.

21   Plaintiff admitted that he had set fire to his cell at least ten times, and that during at least
22   five of these incidents, he assaulted or threatened to assault staff who attempted to remove him
23   from his cell. *Id.* at 49. He acknowledged that he had a history of stabbing officers and throwing
24   feces, urine, and water at them, and that he made officers aware of his violent tendencies. *Id.* at
25   51-53. He indicated that he liked to make officers "work" to get him out of his cell. *Id.* at 51. He
26   admitted that he has spit at and bitten officers numerous times. *Id.* at 53-54. After biting off a
27   portion of a correctional officer's finger in court, he was placed on statewide security precautions.
28   *Id.* at 56-57.

## II.   Legal Standard

### A.   Summary Judgment

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computs., Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted). The same standards apply to both a motion for summary judgment and a motion for summary adjudication. *See* Fed. R. Civ. P. 56(a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing either that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider materials in the record not cited by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an

1  essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins.
2  Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this
3  initial burden, the burden then shifts to the non-moving party "to designate specific facts
4  demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d
5  376, 387 (citing *Celotex Corp.*, 477 U.S. at 323). The non-moving party must "show more than
6  the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477
7  U.S. 242, 252 (1986)). However, the non-moving party is not required to establish a material
8  issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to
9  require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec.
10 Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

11     The court must apply standards consistent with Rule 56 to determine whether the moving
12 party has demonstrated there to be no genuine issue of material fact and that judgment is
13 appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).
14 "[A] court ruling on a motion for summary judgment may not engage in credibility
15 determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir.
16 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the
17 nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.
18 *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*,
19 198 F.3d 1130, 1134 (9th Cir. 2000).

20     Importantly, though, "[w]hen opposing parties tell two different stories, one of which is
21 blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not
22 adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott
23 v. Harris*, 550 U.S. 372, 380 (2007). For example, where a videotape—that has not been
24 challenged for its authenticity or accuracy—"clearly contradicts the version of the story told by"
25 the nonmovant, the facts should be viewed "in the light depicted by the videotape." *Id.* at 379-91.

26     **B.    Eighth Amendment Deliberate Indifference**

27     The Eighth Amendment's prohibition against cruel and unusual punishment protects
28 prisoners from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045

(9th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Prison officials therefore have a "duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). A prison official violates the Eighth Amendment by failing to ensure inmate safety when: (1) an inmate is incarcerated under conditions posing "a substantial risk of serious harm"; and (2) the prison official deliberately "disregards the risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 837, 847.

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

**III.   Analysis**

Plaintiff generally argues that he is entitled to summary judgment, though he does not produce any evidence or make any specific arguments to support his contention. ECF No. 81. Defendants also move for summary judgment, arguing that the video evidence contradicts plaintiff's outline of events and shows that no defendants violated plaintiff's Eighth Amendment rights. ECF No. 91 at 6-7. Defendants contend that the video evidence demonstrates that defendants attempted to extinguish the fire, monitored plaintiff's cell, and contacted the fire department for both fires that plaintiff set that day. *Id.* at 7. Defendants contend that the record evidence demonstrates that they did not attempt to extract plaintiff from his cell due to his behavior and history of seriously injuring correctional officers. *Id.* They also argue that they are entitled to qualified immunity. *Id.* at 8-9.

Plaintiff opposes defendant's motion for summary judgment, again generally asserting that defendants are not entitled to summary judgment, but without identifying any material facts

in dispute. *See generally* ECF No. 95. In reply, defendants reassert that no genuine issues of material fact exist and that they are entitled to summary judgment. ECF No. 96.

Defendants' motion for summary judgment is granted. There is no genuine dispute over any material fact that might show that defendants acted with a deliberate indifference when they did not immediately remove plaintiff from his cell. Record evidence does not demonstrate that any of the named defendants drew the inference that a substantial risk of serious harm existed. *See Toguchi*, 391 F.3d at 1057. Video evidence demonstrates that officers immediately acted when they discovered plaintiff had set a fire in his cell, and that plaintiff refused to exit his cell when initially asked. Regardless of which party threatened the other during this time, or whether threats were even made, the fact remains that plaintiff refused to exit his cell when asked by correctional staff. Defendants put out the fire in plaintiff's cell and continued to monitor his cell throughout the incident. When the first fire was extinguished, and after evacuated inmates returned to their cells, plaintiff set another fire. Again, he refused to exit his cell, and officers continued to monitor the fire. Defendants did not believe that the situation called for an emergency evacuation, especially considering defendant's prior violent history with officers, meaning that they did not draw an inference that a substantial risk of serious harm existed. *See Toguchi*, 391 F.3d at 1057. As such, because the record does not demonstrate that a genuine issue of material fact exists related to deliberate indifference, summary judgment is granted in defendants' favor.[3]

**Plaintiff's Remaining Motions**

Plaintiff has also filed: (1) a motion for attorneys' fees, ECF No. 82; (2) a motion to enforce a settlement agreement, ECF No. 88; and (3) two motions for a settlement conference, ECF Nos. 90, 94. I deny these motions.

First, plaintiff's motion for attorneys' fees is premature, as there has been no judgment entered in this case. *See Goodin v. Innovative Tech. Solutions*, No. 06-00344-JMS-BMK, 2007 WL 1549485, at *1 (D. Haw. May 25, 2007) ("While the statute does not specify that motions for

---

[3] Because I find that plaintiff has not shown that defendants violated his Eighth Amendment rights, I need not address defendants' qualified immunity defense.

attorney's fees may only be filed after final judgment, numerous courts have found such motions premature."); *see also Gemini Ins. Co. v. Kukui'ula Dev. Co. (Hawaii), LLC.*, No. 10-00637 LEK, 2013 WL 1103338, at *1 (D. Haw. Feb. 28, 2013), *report and recommendation adopted sub nom. Gemini Ins. Co. v. Kukui'ula Dev. Co. (Hawaii), LLC.*, No. 1:10-CV-00637-LEK, 2013 WL 1103295 (D. Haw. Mar. 15, 2013) ("[W]here a plaintiff's claims remain undecided and judgment had not been entered, a motion for attorneys' fees is premature."). Additionally, pro se litigants are generally not entitled to attorneys fees, *Gonzalez v. Kangas*, 814 F.2d 1411, 1412 (9th Cir. 1987), and if plaintiff is represented by counsel, counsel must make an appearance on the record. If plaintiff's counsel does not make their appearance on the record, they are not entitled to fees, either.

Plaintiff's motion to enforce a settlement agreement asks this court to unilaterally settle the case in plaintiff's favor and award him $275,000. ECF No. 88. I do not have the authority to take such action, especially considering that I am granting defendants' motion in their favor. I will deny this motion.

Finally, plaintiff moves to set settlement conferences. ECF Nos. 90, 94. However, both parties have filed motions for summary judgment, and in light of the ruling on these motions, no settlement conference is necessary. Moreover, there is no indication that defendants are open to a settlement conference at this juncture. *See* Local Rule 271(b)(4) (voluntary consent of all parties necessary to set a settlement conference). As such, I deny this motion.

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 81, is DENIED.
2. Defendants' motion for an extension of time to file their motion for summary judgment, ECF No. 89, is GRANTED.
3. Defendants' motion for summary judgment, ECF No. 91, is GRANTED.
4. Plaintiff's motion for attorneys' fees, ECF No. 82, is DENIED.
5. Plaintiff's motion to enforce a settlement agreement, ECF No. 88, is DENIED.
6. Plaintiff's motions for a settlement conference, ECF Nos. 90 & 94, are DENIED.
7. Judgment is entered in defendants' favor and against plaintiff.

8. The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

Dated: __May 15, 2025__

                                              JEREMY D. PETERSON
                                              UNITED STATES MAGISTRATE JUDGE